IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FRANDRICH PIERRE,
*Petitioner*,

v.

MARKWAYNE MULLIN, *et al.*,
*Respondents*.

1:26-cv-3000-MSN-WEF

ORDER

Frandrich Pierre ("Petitioner") filed a two-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 1. Specifically, Petitioner alleges that his continued immigration detention violates 8 U.S.C. § 1226 (Count I) and his due process rights (Count II).

Petitioner is currently detained at the Caroline Detention Facility in Bowling Green, Virginia. ECF 1 ¶ 47. The Petition argues that he is detained under 8 U.S.C. § 1226(a) and thus entitled to a bond hearing that Federal Respondents were allegedly withholding. *Id.* at 1-2. In response, the Federal Respondents aver that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) because he was apprehended shortly after his illegal entry into the United States. ECF 4 at 1. Thereafter, Petitioner filed a reply reiterating his argument that he is subject to detention under section 1226, and a supplemental filing attaching a warrant for arrest of alien and notice of custody determination that he had recently received from a Freedom of Information Act request. *See* ECF 8, 9.

## I. BACKGROUND

### A. Factual Background

Petitioner is a citizen of Haiti. ECF 1 ¶ 4. Petitioner applied for admission to the United States on March 19, 2024, while he was still in Mexico. ECF 4-1 at 5. At that time, Petitioner supplied various information to Customs and Border Protection ("CBP"), and CBP determined he was inadmissible to the United States. *Id.* Petitioner was served with a notice to appear identifying him as an "arriving alien" and he was then was paroled into the United States. *Id.*; ECF 1-1 at 1. Petitioner filed an application for asylum on September 11, 2024. ECF 1 ¶ 44. On August 18, 2026, ICE officials arrested Petitioner, and he is currently detained at the Caroline Detention Facility. *Id.* ¶¶ 46, 47. Both the warrant for Petitioner's arrest and the notice of his custody determination cite section 236 of the Immigration and Nationality Act as the authority for his arrest. *See* ECF 9-1 ("Any immigration officer authorized pursuant to sections 236 … of the Immigration and Nationality Act …); ECF 9-2 ("Pursuant to the authority contained in section 236 of the Immigration and Nationality Act … you will be: Detained by the Department of Homeland Security."). Petitioner is not subject to a final order of removal. ECF 1 ¶ 48.[1]

### B. Legal Background

Persons detained upon arrival into the United States fall into two categories: noncitizens including those who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" or specially designated by the Attorney General covered under 8 U.S.C. § 1225(b)(1), and "most other applicants for admission" covered under the "catchall" provisions of 8 U.S.C. § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

[1] Federal Respondents have waived any argument that Petitioner did not exhaust his administrative remedies with respect to his habeas claim.

Persons subject to Section 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id*. But, if a noncitizen subject to Section 1225(b)(1) indicates either an "intention to apply for asylum' or a "fear of persecution," then they will be referred for an asylum interview by an immigration officer. *Id*. If the officer determines that the noncitizen has a "credible fear" of persecution, then the claim will receive "full consideration" in standard removal proceedings pursuant to 8 U.S.C. § 1229a. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 110 (2020). In such a scenario, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Similarly, under the catchall provision of Section 1225(b)(2), the applicant for admission shall be mandatorily detained if the "examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

But even so, under both sections the government may still release the noncitizen on parole "on a case by case basis for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5)(A)). Regulations require that, in determining whether parole is appropriate, DHS officials "should apply reasonable discretion" and may consider "all relevant factors" including: the giving of an undertaking by the applicant, counsel, or sponsor to ensure appearances or departure; community ties such as close relatives with known addresses; and agreement to reasonable conditions (such as periodic reporting of whereabouts. 8 C.F.R. § 212.5(d) (noting that appropriate bond or "reasonable assurances that the alien will appear at all hearings and/or depart the United States when required to do so" may be required).

Humanitarian parole "shall not be regarded as an admission of the alien" and if parole is revoked, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other

applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). But in revoking parole, Section 1182(d)(5)(A) requires that the DHS determine that "the purposes of such parole . . . have been served." Moreover, the regulations specify that:

> (1) Automatic. Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.
>
> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5(e) (emphasis added).

8 U.S.C. § 1226, in contrast, establishes "the default rule" for detaining and removing aliens "'already present in the United States.'" *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564, 578 (E.D. Va. 2025) (quoting *Jennings*, 583 U.S. at 303). Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pending the removal decision, the Attorney General may "continue to detain the arrested alien," "release the alien on ... bond of at least $1,500," or "release the alien on... conditional parole." *Id.* §§ 1226(a)(1)–(2) (emphasis added). Thus, individuals subject to detention under § 1226(a) are entitled to a bond hearing.

Sections 1225 and 1226 create a dichotomy: § 1225(b)(2)(A) "covers aliens seeking admission to the United States" and § 1226(a) "covers aliens already present in the United States." *Duarte Escoboar*, 807 F. Supp. 3d at 578. A detainee seeking bond must therefore demonstrate that they are detained subject to § 1226, which permits bond determinations, rather than § 1225, which does not.

## II. ANALYSIS

The central question presented in this Petition is whether Petitioner's re-detention falls under § 1225 or § 1226. Petitioner claims that his detention is governed by 8 U.S.C. § 1226, and he is therefore entitled to an individualized bond hearing. ECF 1 at 2. Federal Respondents argue that by virtue of Petitioner's apprehension shortly after his entry he is an "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). ECF 4 at 1.

Petitioner is correct that he is subject to discretionary detention under § 1226. First, there is no dispute between the Parties that after entry Petitioner was deemed inadmissible but was released on humanitarian parole. ECF 1 ¶ 43 ("DHS officials granted Petitioner parole"); ECF 4-1 at 2 ("[Petitioner] was paroled into the United States"); ECF1-1 (Notice to Appear identifying Petitioner as an "arriving alien"). When humanitarian parole is granted, "it comes with a key 'reservation of rights by the Government'" whereby the government is "authorized to continue to 'treat the non-citizen' on parole 'as if stopped at the border.'" *Gomez Villalobos v. Crawford*, No. 2:26CV12, 2026 WL 1165576, at *3 (E.D. Va. Apr. 29, 2026) (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215–16 (D. Mass. 2025)). As explained in the INA, humanitarian parole "shall not be regarded as an admission of the alien," and if parole is revoked, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

8 U.S.C. § 1182(d)(5)(A). Courts have described this treatment, whereby a non-citizen is physically permitted to enter the country but are treated, for legal purposes, as if stopped at the border, as a "legal fiction." *Pineda-Berrios v. Lyons*, No. 1:25-CV-2332 (LMB/LRV), 2026 WL 384159, at *2 (E.D. Va. Feb. 11, 2026) (quoting *Chanaguano Caiza v. Scott*, 2025 WL 3013081, at *5 (D. Me. Oct. 28, 2025)).

However, the details of Petitioner's parole are murky. Neither party provided the Court with Petitioner's parole paperwork. Petitioner alleges that his parole expired. *See* ECF 1 ¶ 51 ("Petitioner is not subject to any of mandatory detention statutes, because he was paroled into the United States in 2024, and *following the expiration of that parole*, became merely an individual 'present without having been admitted.'") (emphasis added); *id.* ¶ 54 ("Upon information and belief, Petitioner was detained by ICE in the interior of the United States *following the expiration of his period of parole*.") (emphasis added). Federal Respondents do not rebut that assertion. The expiration of Petitioner's parole aligns with the Court's understanding that humanitarian parole generally expires after one year. *See e.g. W. R. v. Jeffrey Crawford*, No. 1:26-cv-1720, ECF 16 at 2 (E. D. Va. Jul. 10, 2026) (Petitioner's humanitarian parole expiring after one year); *Edress Omari v. Todd Lyons,* No. 1:25-cv-2483-MSN-WBP, ECF 9 at 4 (same); 8 C.F.R. § 212.5(e)(1)(ii) ("Parole shall be automatically terminated without written notice ... at the expiration of the time for which parole was authorized[.]"). As such, the Court will proceed with the understanding that Petitioner's humanitarian parole has already expired.[2]

Assuming Petitioner's parole expired, the government asks this Court to find that Petitioner inhabited applicant for admission legal fiction when he was released on humanitarian parole on

[2] Even if Petitioner's humanitarian parole has not yet expired, there is no evidence that the Federal Respondents affirmatively terminated Petitioner's parole pursuant to the procedure required by the regulations. See 8 C.F.R. § 212.5(e)(2).

March 19, 2024, and further, that he remained trapped in that status to the present day. However, that contention is belied by both the record and common sense. Even if the Court accepts that Petitioner entered the humanitarian parole legal fiction at the inception of the parole on March 19, 2024,[3] that status ended with the expiration of his parole. The legal fiction expired alongside the expiration of Petitioner's humanitarian parole, thus making Petitioner like any other undocumented immigrant present within the United States. *See W. R.*, No. 1:26-cv-1720, ECF 16 at 7 (explaining that Petitioner's legal fiction expired with the expiration of his parole); *Gomez Villalobos v. Crawford*, No. 2:26CV12, 2026 WL 1165576, at *5 (E.D. Va. Apr. 29, 2026) ("[E]ven accepting that the 'legal fiction' of non-presence recognized in *Thuraissigiam* extends to detention procedures … this Court finds that such fiction ends when a petitioner has enjoyed years of post-parole presence."); *Becker Gabriel Tirado Izarra, v. Joseph Simon*, No. 3:26CV148 (RCY), 2026 WL 1876778, at *4 (E.D. Va. Jun. 30, 2026) ("…Petitioner's parole ended and he was not detained based on the expiration of his parole. Rather, Petitioner was detained again after agents randomly encountered him. Accordingly… Petitioner is entitled to a bond hearing pursuant to § 1226(a)."); *Penott Rodriguez v. Fields*, No. CV 26-117-DLB, 2026 WL 1078101, at *3 (E.D. Ky. Apr. 21, 2026) ("It follows logically then, that once Petitioner's parole expired, yet he

[3] Some Courts have found that the legal fiction only applies to admission rights, and that it does not apply to the right to be free from detention without the process of a detention hearing. *See Torres v. Hermosillo*, No. 2:25cv2687, 2026 WL 145715, at *4 (W.D. Wash. Jan. 20, 2026) (explaining that the entry fiction applied by the Supreme Court in *Thuraissigiam* applied only to noncitizens' rights regarding admission and that "the Supreme Court has never applied the entry fiction doctrine ... to constitutionally justify the detention of a person living freely, for years, within the United States" (citations omitted)); *Rincon v. Hyde*, 810 F. Supp. 3d 101, 113 (D. Mass. 2025) (ordering a bond hearing after observing that "to apply the entry fiction doctrine to [a petitioner that was on humanitarian parole for more than three years] is to set aside the plain meaning of the Fifth Amendment altogether"); *Strunin v. Garcia*, No. 5:26cv106, 2026 WL 958952, at *8 (S.D. Tex. Mar. 3, 2026) ("Pretending that Petitioner never entered the United States [during the years he was a parolee] not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every 'person' within the United States." (quoting *Torres*, 2026 WL 145715, at *4)); *Singh v. Bondi*, No. SA-26-CA-00541-XR, 2026 WL 752457, at *8 (W.D. Tex. Mar. 16, 2026) ("Noncitizens who have lived with relative freedom in the United States for extended periods—unlike those detained in immigration processing centers at the border—cannot reasonably be deemed never to have been 'here.'" (quoting *Rincon*, 2025 WL 3122784, at *7)). The Court need not answer that question here, finding that even if the fiction applied at some point in the past, it is not presently applicable to the Petitioner.

remained in the country, he would have similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having any clue as to their whereabouts."); *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065, 2025 WL 3314420, at *17 (E.D.N.Y. Nov. 28, 2025) ("Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal.").

The termination of Petitioner's humanitarian parole, and thus the termination of his inclusion in proceedings under Section 1225, is confirmed by the record. The record reveals that throughout the process of re-detaining the Petitioner, the government treated him as detained pursuant to § 1226. Petitioner's Warrant for Arrest identifies Section 236 as the legal basis for Petitioner's arrest. *See* ECF 9-1 at 1 ("Any immigration officer authorized pursuant to *section 236* … of the Immigration and Nationality Act"). The Notice of Petitioner's Custody Determination similarly identifies Section 236 as the authority for Petitioner's detention. *See* ECF 9-2 at 1 ("Pursuant to authority contained in *section 236* of the Immigration and Nationality Act"). There is nothing in the record that indicates that the government re-detained Petitioner pursuant to section 1225 or to the revocation of his humanitarian parole.

Because Petitioner has been present in the United States following the expiration of his humanitarian parole, and because § 1226(a) sets forth "the default rule" for detaining and removing noncitizens "already present in the United States," *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), his detention is governed by § 1226(a). And under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an IJ in which the IJ must determine whether he poses a danger to the community or a risk of flight. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). Unless the IJ makes such a determination, Petitioner's continued detention is unlawful and, for

many of the reasons stated in *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800, at **8-10 (E.D. Va. Sept. 30, 2025), violates his right to due process.[4] Thus, Petitioner's current detention is unlawful, and Federal Respondents must release him.

## III. CONCLUSION

For all the reasons stated above, the Petition (ECF 1) is GRANTED, and it is hereby

ORDERED that Petitioner be immediately released from custody, with all his personal property, pending his bond hearing before an immigration judge. Petitioner must live at a fixed address which he must provide to the Federal Respondents.[5] Petitioner must also appear at the bond hearing once Federal Respondents notify him of its date, time, and location; it is further

ORDERED that Federal Respondents must provide Petitioner with a standard bond hearing pursuant to 8 U.S.C. § 1226(a); it is further

ORDERED that Federal Respondents are ENJOINED from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1225(b)(1); it is further

ORDERED that Federal Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Petitioner unless he has committed a new violation of any federal, state, or local law, or has failed to attend any properly noticed immigration or court hearing, or pursuant to 8 U.S.C. § 1231(a)(2).

**IT IS SO ORDERED.**

[4] Because the Court grants the Petition as to Petitioner's due process claims, it need not address Petitioner's other claims.

[5] If Petitioner opts to file a pleading in this civil action notifying the Federal Respondents of his fixed address, Petitioner should file that pleading under seal. No separate motion to seal will be required.

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
Michael S. Nachmanoff
United States District Judge

September 22, 2026
Alexandria, Virginia